United States District Court
Southern District of Texas
**ENTERED**
December 30, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DERRICK PLEASANT, § § § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-23-828 |
| § | |
| KANSAS CITY SOUTHERN RAILWAY COMPANY, § § § | |
| Defendant. § § | |

**MEMORANDUM AND OPINION**

Derrick Pleasant sues his employer, The Kansas City Southern Railway Company. His Third Amended Complaint asserts hostile work environment and retaliation claims under Title VII; disability discrimination under the Americans with Disabilities Act, Rehabilitation Act, and Texas Labor Code; and retaliation under the Family and Medical Leave Act. (Docket Entry No. 60). The Kansas City Southern Railway Company has moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Docket Entry No. 63). Mr. Pleasant opposes the motion. (Docket Entry No. 65).

Based on the pleadings, the motion and response, the record, and the applicable law, The Kansas City Southern Railway Company's motion is granted. All of Mr. Pleasant's claims are dismissed with prejudice. The reasons for the rulings are explained below.

**I.      Background**

Derrick Pleasant began working for The Kansas City Southern Railway Company as a locomotive engineer in December 2013. (Docket Entry No. 60 at ¶ 9). During one of Mr. Pleasant's night shifts in 2018, his coworker, Richard Montalvo, allegedly greeted Mr. Pleasant,

"moved in for a bear hug, caressed his chest and nipple, winked his eye and blow [sic] a kiss." (*Id.* at ¶ 10). Mr. Pleasant told Mr. Montalvo to "get off me." (*Id.* at ¶ 11). The following year, another coworker, Andrew Collins, was allegedly terminated after reporting that he was sexually harassed by Mr. Montalvo. (*Id.* at ¶ 12).

In March of 2021, Mr. Montalvo called Mr. Pleasant "precious" and "sweetness" when they saw each other in the parking lot. (*Id.* at ¶ 13).

On April 21, 2021, Mr. Montalvo again called Mr. Pleasant "precious" and sweetness." (*Id.* at ¶¶ 14–15). According to the complaint,

> Mr. Montalvo followed Mr. Pleasant into the shuttle van and placed his hand on Mr. Pleasant's knee. While holding his knee in a groping manner for the length of the conversation, Mr. Montalvo said "no matter how you feel about me sweetness, I will always love you". Mr. Montalvo continued and said "why are you being like Collins".

(*Id.* at ¶ 16). Mr. Pleasant reported this incident to his union representative, his superintendent, and Human Resources. (*Id.* at ¶ 17).

On May 4, 2021, Mr. Pleasant had a stroke. (*Id.* at ¶ 19). He was approved for leave under the Family and Medical Leave Act. (*Id.*). A representative from the Railway told him that it would help him find work in another position if he could not return as an engineer. (*Id.*). While on leave, Mr. Pleasant received several communications from Railway employees about his allegations against Mr. Montalvo. (*Id.* at ¶ 20). The Railway held a hearing on the allegations without Mr. Pleasant's presence. (*Id.* at ¶ 21).

On February 14, 2023, Mr. Pleasant emailed Human Resources stating that he would like to return to work in a different position as an accommodation for his disability. (*Id.* at ¶ 24). He subsequently applied for, but did not get, an "intermodal job" with the Railway. (*Id.* at ¶¶ 25–27). In March and April 2023, Mr. Pleasant continued to reach out to the Railway about returning to

work. (*Id.* at ¶¶ 29–31). He was not interviewed or hired for any other available positions. (*Id.* at ¶ 32).

## II.     The Legal Standard for a Rule 12(c) Motion to Dismiss

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings" under Federal Rule of Civil Procedure 12(c). "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting reference omitted). "Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same." *Id.* at 313 n.8.

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

3

### III.   Analysis

#### A.   The Title VII Hostile Work Environment Claim

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . sex."  42 U.S.C. § 2000e-2(a)(1).  This prohibition covers same-sex harassment claims when "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–80 (1998) (quoting reference omitted).  Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment."  *Id.* at 81.  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."  *Id.* (quoting reference omitted).

"In a case of alleged same-sex harassment, courts first must determine whether the harasser's conduct constitutes sex discrimination."  *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002).  There are "three ways in which a plaintiff can show that an incident of same-sex harassment constitutes sex discrimination."  *Id.*

> First, he can show that the alleged harasser made "explicit or implicit proposals of sexual activity" and provide "credible evidence that the harasser was homosexual." Second, he can demonstrate that the harasser was "motivated by general hostility to the presence of [members of the same sex] in the workplace." Third, he may "offer direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."

*Id.* (quoting *Oncale*, 523 U.S. at 80).

Mr. Pleasant has alleged none of the ways courts recognize claims of same-sex harassment as sex discrimination claims.  Even if the court infers that Mr. Montalvo's actions were proposals of sexual activity, which is a stretch, Mr. Pleasant does not allege that Mr. Montalvo is

4

homosexual. Nor are there any allegations that Mr. Montalvo was motivated by hostility to other men or treated women and men differently.

Even if Mr. Pleasant could show that he suffered harassment because of his sex, his complaint fails to state a hostile work environment claim.

> In support of a hostile work environment sexual harassment claim, an employee is required to show that (1) []he belongs to a protected group; (2) []he was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a term, condition, or privilege of employment (*i.e.*, that the sexual harassment was so pervasive or severe as to alter her conditions of employment and create an abusive working environment); and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

*Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996).

Mr. Pleasant alleges three discrete incidents with Mr. Montalvo over a period of approximately three years. Although two of the incidents involved physical contact between the men, each interaction was brief. Mr. Pleasant alleges several ways in which he was subjectively impacted by his interactions with Mr. Montalvo. But these three isolated incidents are neither severe nor pervasive enough to create an objectively hostile work environment. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) ("To be actionable, the work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." (quotation marks and quoting reference omitted)).

Mr. Pleasant also fails to allege that the Railway "knew or should have known of the harassment and failed to take prompt remedial action." *See Farpella-Crosby*, 97 F.3d at 806. Mr. Pleasant does not allege that he reported Mr. Montalvo's conduct to the Railway before April 2021. *See generally* (Docket Entry No. 60 at ¶¶ 9–17). Mr. Pleasant argues that the Railway was "on notice of Mr. Montalvo's conduct dating back to 2019 when Mr. Collins reported it to

Superintendent Ron Nicoles and human resources." (Docket Entry No. 65 at 4) (citing Docket Entry No. 60 at ¶ 12). But the allegation of Mr. Montalvo's sexual harassment of Mr. Collins, without more, does not suggest that the Railway knew or should have known that Mr. Montalvo had also harassed Mr. Pleasant.

Mr. Pleasant reported the April 21, 2021, incident to his superintendent and Human Resources. (Docket Entry No. 60 at ¶ 17). Within five weeks, the Railway's investigation into Mr. Pleasant's allegations about Mr. Montalvo's conduct was underway, and the Railway was preparing for a hearing. *See* (*id.* at ¶ 50). These allegations show that once the Railway learned about Mr. Montalvo's alleged harassment of Mr. Pleasant, it took prompt remedial action.

Mr. Pleasant's Third Amended Complaint fails to state a hostile work environment claim under Title VII. Because he has had multiple attempts to amend, the court concludes that further amendment would be futile. This claim is dismissed, with prejudice.

### B. The Title VII Retaliation Claim

"To establish a *prima facie* case of retaliation, a plaintiff must show that (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *Newbury v. City of Windcrest*, 991 F.3d 672, 678 (5th Cir. 2021) (quotation marks and quoting reference omitted). "To plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the '*terms, conditions, or privileges*' of his or her employment." *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 430 (5th Cir. 2023) (per curiam) (alteration adopted) (quoting reference omitted).

Title VII's antiretaliation provision protects an individual "from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). In this

6

context, that means the challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and quoting reference omitted).

Mr. Pleasant does not allege that he has been terminated, demoted, denied a promotion, or prematurely removed from medical leave. Rather, Mr. Pleasant asserts that he "suffered an adverse employment action when he was told not to contact human resources by Noah Garcia, in-house counsel for [the Railway]." (Docket Entry No. 65 at 4) (citing Docket Entry No. 60 at ¶ 41). The complaint includes an excerpt from Mr. Garcia's email:

> I understand that previously Wade Freeman encouraged you to apply for positions you believe you are qualified and able to perform, and I understand that you have provided medical services with documentation to support your leave for, at least, a number of months. Therefore, we do not anticipate the need for any future correspondence between you and our business units (Wade Freeman or Jill Byers) in the immediate future.

(Docket Entry No. 60 at ¶ 41).

The Railway attached to its reply brief the full email thread between Mr. Pleasant and Mr. Garcia. (Docket Entry No. 66-1). When reviewing a motion to dismiss, this court may consider "documents that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [his] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (alteration adopted) (quoting reference omitted). However, "a reply brief that presents dispositive evidence by way of new affidavits and exhibits deprives the nonmovant of a meaningful opportunity to respond." *Springs Industries, Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991); *cf. Redhawk Holdings Corp. v. Schreiber*, 836 F. App'x 232, 235 (5th Cir. 2020) ("Generally, neither this court nor the district courts of this circuit will review arguments raised for the first time in a reply brief." (alteration adopted) (quotation marks and quoting reference omitted)). The court will consider the Railway's

7

argument that Mr. Garcia's email must be viewed in the context of Mr. Pleasant's pro se lawsuit because that argument was made in the motion to dismiss. *See* (Docket Entry No. 63 at 17). The court will not, however, consider the external evidence attached only to the reply brief.

Even limited to the excerpt provided in the complaint, Mr. Garcia's email does not constitute a material adverse employment action. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67. When Mr. Garcia sent the email on April 25, 2023, *see* (Docket Entry No. 60 at ¶ 41), Mr. Pleasant had already filed his lawsuit and was litigating pro se, *see* (Docket Entry No. 1).[1] Mr. Garcia did not tell Mr. Pleasant not to contact Human Resources, and the allegations do not raise an inference of an implicit threat. The email does not evidence any change in the "terms, conditions, or privileges" of Mr. Pleasant's employment. *See Harrison*, 82 F.4th at 430 (quoting reference omitted). Nor would the email "dissuade[] a reasonable worker from making or supporting a charge of discrimination," *see Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68— indeed, Mr. Pleasant continued to litigate his claims after receiving Mr. Garcia's email. Because Mr. Pleasant does not allege any injury or harm that resulted from receiving Mr. Garcia's email, his claim that the email constituted illegal retaliation under Title VII fails. *See id.* at 67–68.

In his response, Mr. Pleasant does not argue that the Railway's failure to assist him in finding an alternate job was an adverse employment action causally connected to his protected conduct, in violation of Title VII's antiretaliation provision. *See* (Docket Entry No. 65 at 4). To the extent that this theory was pleaded, Mr. Pleasant's "failure to pursue this claim beyond [his] complaint constitute[s] abandonment." *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

---

[1] Mr. Pleasant subsequently retained counsel who has represented him since before the filing of the Third Amended Complaint.

After multiple attempts to amend, Mr. Pleasant has failed to state a retaliation claim under Title VII. Because amendment would be futile, this claim is dismissed with prejudice.

### C. The Americans with Disabilities Act, Rehabilitation Act, and Texas Labor Code Claims

Mr. Pleasant argues that the Railway failed to accommodate his disability by failing to transfer him to a non-engineering position. *See* (Docket Entry No. 65 at 4–5).[2] Under the Americans with Disabilities Act, "[a] failure-to-accommodate claim requires a showing that: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 323 (5th Cir. 2021) (quotation marks and quoting reference omitted). This same analysis applies under the Rehabilitation Act and the Texas Labor Code. *Frame v. City of Arlington*, 657 F.3d 215, 223–24 (5th Cir. 2011) (en banc) (Rehabilitation Act and Americans with Disabilities Act are generally interpreted in the same manner); *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 578 n.16 (5th Cir. 2020) (courts follow Americans with Disabilities Act caselaw when evaluating claims under the Texas Labor Code).

A "reasonable accommodation" can include "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

---

[2] The only disability discrimination claim that Mr. Pleasant presses in his response to the Railway's motion to dismiss is a failure to accommodate claim. (Docket Entry No. 65 at 4–5). To the extent his complaint asserts other claims under the ADA, Rehabilitation Act, or Texas Labor Code, those claims have been abandoned. *See Black*, 461 F.3d at 588 n.1.

Mr. Pleasant alleges that he was disqualified from his position as an engineer because of his stroke and related symptoms. (Docket Entry No. 60 at ¶ 45). The Railway knew about Mr. Pleasant's medical issues and the fact that "he was not released to work as an engineer." (*Id.* at ¶ 26). The complaint identifies multiple positions at the Railway that Mr. Pleasant applied for and did not get. (*Id.* at ¶ 45). These included an "intermodal position," for which he interviewed but was not selected. (*Id.* at ¶¶ 26, 27, 45).

The problem is that it is not clear whether Mr. Pleasant was qualified for the open positions he sought. Mr. Pleasant asserts that he "was at all relevant times capable of performing the essential functions" of at least the intermodal position, (*id.* at ¶ 45), but he alleges no facts to support that assertion. The complaint does not describe the essential functions of any of the employment positions for which Mr. Pleasant applied. Nor does the complaint include factual allegations supporting the assertion that Mr. Pleasant could perform those functions "with or without reasonable accommodation." *See* 42 U.S.C. § 12111(8). This claim cannot survive dismissal because Mr. Pleasant alleges no facts to support his assertion that he was qualified for any of the jobs that he applied for. *See Weber*, 989 F.3d at 323; *see also Iqbal*, 556 U.S. at 678 (a pleading offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy the Rule 12(b)(6) standard (quoting *Twombly*, 550 U.S. at 555)).

Because amendment would be futile, Mr. Pleasant's disability discrimination claims under the Americans with Disabilities Act, Rehabilitation Act, and Texas Labor Code are dismissed with prejudice.

### D.   The FMLA Retaliation Claim

To plead retaliation under the FMLA, a plaintiff must plead facts that could show: "1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was

treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA." *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 583 (5th Cir. 2006).

Mr. Pleasant asserts a retaliation claim under the FMLA[3] because "while he was clearly on FMLA leave, supervisors and human resources representatives of [the Railway] contacted him to provide testimony about the sexual harassment he endured." (Docket Entry No. 65 at 6). He alleges that multiple different people from the Railway called or texted him about the investigation and hearing while he was on leave. (Docket Entry No. 60 at ¶¶ 20, 50). There are no allegations that Mr. Pleasant responded to any of the texts or calls from the Railway employees, and Mr. Pleasant was not required to testify at the hearing. (*Id.* at ¶ 21). No other retaliatory conduct, other than the calls and messages, is alleged under this count. *See* (*id.* at ¶¶ 48–51); (Docket Entry No. 65 at 6–7). The calls and text messages did not affect any terms, conditions, or privileges of Mr. Pleasant's employment. Mr. Pleasant has failed to allege an adverse employment action resulting from his seeking FMLA leave.

Mr. Pleasant's FMLA retaliation claim is dismissed, with prejudice because amendment would be futile.

## IV. Conclusion

The Railway's motion for judgment on the pleadings, (Docket Entry No. 63), is granted. Because Mr. Pleasant has already had multiple opportunities to amend, the court finds that further amendment would be futile. All of Mr. Pleasant's claims against The Kansas City Southern Railway Company are dismissed with prejudice. Final judgment is entered by separate order.

---

[3] Mr. Pleasant has asserted a "retaliation claim under the FMLA," not an interference claim. (Docket Entry No. 65 at 6); *see also* (Docket Entry No. 60 at 9) ("Count III: FMLA – Retaliation") (emphasis removed).

SIGNED on December 30, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge